IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| KAREEM DAVENPORT, M49922, | ) ) ) |
| Plaintiff, | ) ) ) |
| vs. | ) ) |
| ANTHONY WILLS, ROB JEFFREYS, MENARD CORR. CTR., ILL. DEPT. OF CORR., LACY MEZO, DEVIN W. EGGERS, TROY L. SLINKARD, S. GEE, BRANDON K. GARCIA, WELGE, KORONDO, | ) ) ) ) ) ) ) ) ) ) ) ) |
| Defendants. | ) |

Case No. 25-cv-176-MAB

# MEMORANDUM AND ORDER

**BEATTY, Magistrate Judge:**

Plaintiff Kareem Davenport, an inmate of the Illinois Department of Corrections (IDOC) currently detained at Menard Correctional Center, brings this civil rights action pursuant to 42 U.S.C. § 1983 for alleged deprivations of his constitutional rights. Specifically, Plaintiff challenges issues surrounding his ongoing requests for placement in protective custody. The Complaint (Doc. 1) was dismissed for violating Rule 8 of the Federal Rules of Civil Procedure, and for containing misjoined claims. Plaintiff's Amended Complaint (Doc. 15) is now before the Court for preliminary review pursuant

1

to 28 U.S.C. § 1915A.[1] Under Section 1915A, the Court is required to screen prisoner complaints to filter out non-meritorious claims. *See* 28 U.S.C. § 1915A(a)-(b). Any portion of a complaint that is legally frivolous, malicious, fails to state a claim upon which relief may be granted, or asks for money damages from a defendant who by law is immune from such relief must be dismissed. 28 U.S.C. § 1915A(b). At this juncture, the factual allegations of the *pro se* complaint are to be liberally construed. *Rodriguez v. Plymouth Ambulance Serv.*, 577 F.3d 816, 821 (7th Cir. 2009).

## THE AMENDED COMPLAINT

Plaintiff's original pleading concerned discrete interactions with 30 individual defendants over the course of two years. (Doc. 1). The Court reviewed the pleading and found that it did not contain a short plain statement of the facts, and it likely contained claims that were misjoined because they concerned many different factual scenarios and did not share common defendants or causes of action. The amended pleading still concerns events that span nearly two years, but it has been reduced from 30 defendants to 11, and Plaintiff has tried to narrow his focus to incidents that impacted his placement in protective custody. Plaintiff argues that by making these modifications, he is now focused on First and Eighth Amendment violations that all pertain to the same "transaction." (Doc. 15 at 23).

---

[1] The Court has jurisdiction to screen the Complaint in light of Plaintiff's consent to the full jurisdiction of a Magistrate Judge, and the limited consent by the Illinois Department of Corrections to the exercise of Magistrate Judge jurisdiction as set forth in the Memorandum of Understanding between this Court and the Illinois Department of Corrections.

Plaintiff first alleges that on April 21, 2022, he attempted to speak to Defendant Mezo about his desire for protective custody while he was being moved from the Medium Security Unit (MSU) to the East cell house. (Doc. 15 at 14). Mezo informed Plaintiff that he would need to raise the issue with the sergeant at the cellhouse, but Plaintiff continued to try to press the conversation. Plaintiff alleges that during this encounter he was walking slowly due to preexisting injuries, which he voiced to Mezo, but despite his contentions, Mezo became frustrated with his pace and ultimately issued him a disciplinary ticket for slowing the line movement. Plaintiff further alleges that the disciplinary proceedings that followed were not adequate because the committee inaccurately reported that he admitted guilt and they did not review video footage. (Doc. 15 at 14). Additionally, he faults Defendants Wills and Jeffreys for their role in the grievance appeal of the discipline. He ultimately received 7 days of segregation and a 1-month grade-reduction.

Plaintiff complains that Mezo violated his First and Eighth Amendment rights in this interaction because the disciplinary ticket was retaliatory, and the conditions in segregation were atypical and significant. He alleges that Mezo deliberately subjected him to cruel and unusual punishment. He claims he was not given any bedding, soap, or clothes beyond the jumpsuit on his back, for the entire 7 days. (Doc. 15 at 15).

Second, Plaintiff alleges that on September 1, 2022, he was denied protective custody and had a 24 hour wait until he could reapply. He explains that the first attempt to place him with a cellmate failed, which then led to staff promising him a single cell. Despite the promise, he alleges that Defendants Eggers and Slinkard were surprised to

3

find someone in the cell that should have been a single-cell, and they gave Plaintiff no alternative options. (Doc. 15 at 15-16). Slinkard and Eggers allegedly got frustrated with Plaintiff, which Plaintiff attributes in part to a prior encounter with Slinkard in July of 2022 about the same topic (protective custody). Eggers promised a crisis team, but when Plaintiff was escorted downstairs Defendant Gee refused assistance and simply walked him to segregation. (Doc. 15 at 16-17). Plaintiff again alleges the associated disciplinary hearing was mishandled, but he admits that the offense was ultimately reduced, and the segregation term was stricken. (Doc. 15 at 17).

He alleges that in association with this instance, Defendants Slinkard, Eggers and Gee violated his First and Eighth Amendment rights by retaliating when he requested protective custody, or a crisis team, and by relegating him to poor conditions in segregation. (Doc. 15 at 17-18).

In Claim 3, Plaintiff complains that for five days in November of 2022, and for about two weeks in December of 2022, he was housed in protective custody intake. (Doc. 15 at 18). On these occasions, he was housed in the receiving and classification building, a building that he alleges has no electricity, no cable, and no wifi. He also complains that he could not shop commissary or attend video visits. Plaintiff claims that these conditions violated the Eighth Amendment because those awaiting protective custody (or in protective custody) are supposed to receive the same standard of living as general population inmates. (Doc. 15 at 18-19). He faults Defendants Wills, Menard, IDOC, and Jeffreys for choosing to place protective custody intake inmates in these conditions.

In Claims 4 and 5, Plaintiff alleges that on November 15, 2023, he asked for a crisis team and to be placed in protective custody. (Doc. 15 at 19-20). Defendant Slinkard was assigned to walk him to the protective custody intake area, and on the walk Slinkard gave Plaintiff grief about making yet another request for protective custody. (*Id.*). Plaintiff alleges that ultimately Slinkard retaliated against him in some fashion during this encounter by issuing him a disciplinary ticket and placing him in segregation. (Doc. 15 at 20). He alleges that his water and toilet were not operational for the first 24 hours, and he was forced to go weeks without any way to clean his cell. He alleges the conditions were atypical.

After Slinkard left Plaintiff at restrictive housing, Plaintiff alleges he experienced a mental health crisis. He alleges that the crisis led to his placement on suicide watch. (Doc. 15 at 21). At some point during this encounter, he alleges that Defendant Garcia maced him without provocation. (Doc. 15 at 21). He claims that Garcia then handcuffed him behind his back, attached restraints to the side of the holding cage, and proceeded to mace him a second time. Plaintiff claims that a nurse medically cleared him, at which point Defendants Korondo and Welge escorted him to a cell coated with feces, urine, and chemical residue. Korondo disabled the water to the cell for 24 hours, and Plaintiff alleges he went weeks without proper cleaning supplies. (Doc. 15 at 21-22). Garcia charged him with a disciplinary offense for spitting on an officer, which Plaintiff contended at a hearing, but he was still found guilty.

In relation to Claims 4 and 5, Plaintiff faults Slinkard and Garcia for violating his First and Eighth Amendment rights, and Welge and Korondo for violating his Eighth

Amendment rights. He alleges that all events described in the complaint are instances of retaliation for times when he sought protective custody or a crisis team. (Doc. 15 at 23). Plaintiff seeks punitive and compensatory damages, as well as permanent injunctive relief to protect him from future harm and to be transferred to another facility.

Based on the allegations in the Amended Complaint the Court designates the following counts:

> **Claim 1:** First or Eighth Amendment claim against Defendant Mezo for alleged retaliation and cruel and unusual punishment on April 21, 2022;
>
> **Claim 2:** First or Eighth Amendment claim against Defendants Slinkard, Eggers, and Gee for alleged retaliation and cruel and unusual punishment on September 1, 2022;
>
> **Claim 3:** Eighth Amendment conditions of confinement claim against Defendants Jeffreys, Wills, IDOC, and Menard for the conditions of confinement in the receiving and classification area in November and December of 2022;
>
> **Claim 4:** First or Eighth Amendment claim against Defendant Slinkard for his alleged conduct on November 15, 2023;
>
> **Claim 5:** Eighth Amendment excessive force claim, and/or First/Fourteenth Amendment discipline claim against Defendant Garcia for his alleged conduct on November 15, 2023;
>
> **Claim 6:** Eighth Amendment conditions of confinement claim against Defendants Korondo and Welge for placing Plaintiff in a filthy cell on November 15, 2023.

The parties and the Court will use these designations in all future pleadings and orders unless otherwise directed by a judicial officer of this Court. Any claim that is mentioned in the Complaint but not addressed in this Order is considered dismissed without

prejudice as inadequately pled under *Twombly*. *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007) (an action fails to state a claim upon which relief can be granted if it does not plead "enough facts to state a claim that is plausible on its face").

### DISCUSSION

A successful claim for First Amendment retaliation requires that a plaintiff show, "(1) he engaged in activity protected by the First Amendment; (2) he suffered a deprivation that would likely deter First Amendment activity in the future; and (3) the First Amendment activity was 'at least a motivating factor' in the Defendants' decision to take the retaliatory action." *Bridges v. Gilbert*, 557 F.3d 541, 546 (7th Cir. 2009) (quoting *Woodruff v. Mason*, 542 F.3d 545, 551 (7th Cir. 2008)). "To make a prima facie showing of causation the plaintiff must show only that the defendant's conduct was a sufficient condition of the plaintiff's injury." *Greene v. Doruff*, 660 F.3d 975, 980 (7th Cir. 2011). Then the burden shifts to the defendant to rebut plaintiff's prima facie showing by establishing that "his conduct was not a necessary condition of the harm—the harm would have occurred anyway." *Id.*

Inmates retain a First Amendment right to complain about prison staff, whether orally or in writing, but only in ways consistent with their status as prisoners. *See Turner v. Safley*, 482 U.S. 78, 89–90 (1987). However, name calling, backtalk, or arguments are not protected speech. *See e.g., Caffey v. Maue*, 679 Fed. App'x 487, 490-91 (7th Cir. 2017); *Kervin v. Barnes*, 787 F.3d 833, 834 (7th Cir. 2015) (finding an inmate engaged in unprotected backtalk when he insisted on talking to a lawyer after a guard said no).

7

In Claim 1, Plaintiff faults Defendant Mezo for retaliating against him when he voiced concerns about his imminent placement in the East cell house, but he also states that Mezo merely deferred to another officer and that she asked him to keep moving but he did not comply or provide reasons why he believed he could not comply. Mezo ultimately issued him a disciplinary ticket for slowing down the movement of inmates, which Plaintiff attached to the complaint. (Doc. 15 at 28). The disciplinary report indicates that he attended the hearing and made a statement on his own behalf. He received 7 days of segregation. He complains the conditions were atypical because he lacked bedding and cleaning supplies and wore only the jumpsuit he had at the time the incident arose.

These events do not support a claim for retaliation or cruel and unusual punishment against Mezo. As to retaliation, an inmate can voice complaints about prison staff or he can voice a desire for healthcare, but when the speech crosses into the territory of being combative or argumentative, it is not longer protected. *See e.g. Kervin*, 787 F.3d at 834 (finding an inmate engaged in unprotected backtalk when he insisted on talking to a lawyer after a guard said no). By Plaintiff's own description of his encounter with Mezo, he began with a request about protective custody, but he veered into the territory of unprotected speech when Mezo clearly delegated that issue to another employee and asked him to keep moving, and Plaintiff resisted. Plaintiff's claim that he had to walk slowly due to prior injuries is not enough to push his claim into the territory of retaliation. Mezo gave clear orders and issued discipline when she felt there was a lack of

compliance. This has nothing to do with Plaintiff's verbal request for protective custody, thus there is not a valid First Amendment claim.

Plaintiff also faults Mezo for the conditions of confinement he endured for seven days in segregation, but he does not say anything that links the conditions personally to Mezo. For example, he does not allege Mezo knew where he would be housed and how he would be treated, nor does he allege he complained to Mezo once he was placed. The key for any § 1983 claim is personal involvement. Because Mezo is not personally linked to the conditions, Claim 1 is insufficient to state a claim against Mezo.

Plaintiff mentions additional individuals in association with the disciplinary proceeding who were not named as defendants, and he faults Jeffreys and Wills for their role in the grievance process after the fact. However, he does not formally delineate a claim against any of these individuals. It is also not apparent that these allegations would support any sort of plausible claim because for a seven-day term of segregation Plaintiff was only entitled to informal due process, which he undisputedly received. *See e.g., Ealy v. Watson*, 109 F.4th 958, 965 (7th Cir. 2024). As to the allegations against Wills or Jeffreys about grievance processing, a mere role in processing a grievance, without participation in the underlying conduct, is insufficient to state a claim. Thus, Claim 1 is insufficient in all respects.

In Claim 2, Plaintiff alleges that Defendants Eggers, Gee, and Slinkard acted in a retaliatory fashion in regard to his requests for a crisis team. He alleges that this encounter also resulted in unfounded discipline in the form of a ticket for refusing housing. As a premise for this claim, he alleges that this was not his first encounter with

9

Slinkard, and that Slinkard explicitly mentioned he was getting tired of Plaintiff's requests for protective custody. This assertion transforms the situation compared to the encounter with Mezo, because here, Plaintiff alleges that Slinkard explicitly used Plaintiff's present and past requests for a crisis team and protective custody as a reason to deny him assistance when he verbalized the request in September of 2022. This assertion could form a possible causal link between Plaintiff's speech in July of 2022 (the first encounter with Slinkard) and September of 2022 the encounter with Slinkard, Eggers, and Gee. Claim 2 may proceed on a theory of alleged retaliation against Defendants Eggers, Gee, and Slinkard.

By contrast, in Claim 2 Plaintiff also faults these three officers for cruel and unusual punishment under the Eighth Amendment related to conditions he ultimately claims he faced in segregation. However, Plaintiff does not contend or even suggest that these three individuals had any knowledge of the specific conditions he would face, or that they had any personal control over it. He admits that he had a disciplinary hearing before other officers prior to placement in segregation, and though he complains about the hearing, he has not actually made a formal legal challenge to the process he was afforded. He served 14 days in segregation under conditions similar to those explained in Claim 1. And as best the Court can tell, it appears Plaintiff received all the process he was entitled to prior to this happening. In total, the Court finds the Eighth Amendment allegations against Gee, Eggers, and Slinkard to be too speculative as pled to proceed.

In Claim 3, Plaintiff faults Defendants Jeffreys (former IDOC director) and Wills (Menard Warden) for the conditions in the receiving and classification area of the prison

10

where he was housed briefly in November and December of 2022. He complains of no cable or wifi, no access to commissary, and missed video visits. He also alleges the building lacked electricity.

To establish a conditions of confinement claim, an inmate must establish (1) a deprivation that is, from an objective standpoint, sufficiently serious that it results in the denial of the minimal civilized measure of life's necessities, and (2) where prison officials are deliberately indifferent to this state of affairs. *Gray v. Hardy*, 826 F.3d 1000, 1005 (7th Cir. 2016), *citing Farmer v. Brennan*, 511 U.S. 825, 824 (1994). Conditions may be considered collectively when analyzing a conditions of confinement claim, and the duration of the allegedly harmful conditions is relevant to the existence of an Eighth Amendment violation. *Id.* Many conditions standing alone are not sufficient to give rise to an Eighth Amendment conditions of confinement claim, but they must also be considered collectively. *Gillis v. Litscher*, 468 F.3d 488, 493 (7th Cir. 2006). Although "the Constitution does not mandate comfortable prisons," *Rhodes v. Chapman*, 452 U.S. 337, 349 (1981), inmates are entitled to adequate food, clothing, shelter, bedding, hygiene materials, and sanitation. *Knight v. Wiseman*, 590 F.3d 458, 463 (7th Cir. 2009).

The majority of the conditions that Plaintiff mentions are not related to necessities like food, clothing, shelter, bedding, or hygiene. Plaintiff's complaints largely focus on a lack of amenities like cable, wifi, or commissary. While the lack of electricity could conceivably have an impact on life's necessities, Plaintiff has not explained how it impacted him physically or otherwise. And with respect to Plaintiff's contention that he missed out on video visits, in the context of discipline, restrictions on access to visits is

11

generally not considered a constitutional violation. *See e.g., Lekas v. Briley*. But even if missing out on family visits might invoke some protected right, Plaintiff does not associate a discrete harm with this issue.

Claim 3 is also insufficient as pled because Plaintiff does not adequately connect the conditions in the receiving and classification area to personal actions of Defendants Jeffreys or Wills. At most he says they chose to place people requesting protective custody in this area of the prison, but choosing that location is different from knowing the conditions are deplorable and choosing it to dole out punishment. Plaintiff says nothing about any personal effort to notify Wills or Jeffreys that the conditions are infirm. Their mere role as supervisors or higher-ups in the prison administration is not sufficient to attribute knowledge or personal responsibility. *See e.g., Burks v. Raemisch,* 555 F.3d at 592, 595 (7th Cir. 2009) (officials cannot be held liable under § 1983 solely based on their positions). As for Plaintiff's allegations against IDOC or Menard, these cannot survive because neither entity is a suable person under § 1983. *See e.g., Smith v. Knox County Jail*, 666 F.3d 1037, 1040 (7th Cir. 2012) (the jail or prison itself is not a suable entity). Thus, Claim 3 will be dismissed as insufficiently pled.

In Claim 4, Plaintiff alleges that he had another run-in with Defendant Slinkard about his desire for a crisis team or protective custody placement. He alleges Slinkard retaliated against him by refusing a crisis team and disciplining him for refusing housing. As with Claim 3, these allegations are sufficient to proceed under the First Amendment. By contrast, Plaintiff faults Slinkard under the Eighth Amendment, but again does not

say anything about Slinkard knowing of or refusing to help him with poor conditions of confinement in segregation.  Claim 4 will proceed only under the First Amendment.

In Claim 5, Plaintiff alleges that he had a mental health breakdown upon arriving at segregation, during which Defendant Garcia gratuitously pepper sprayed him when he was nonthreatening, and even after he was restrained.  These allegations are sufficient to proceed under an Eighth Amendment theory of excessive force against Garcia.  Plaintiff also complains Garcia wrote him an improper disciplinary ticket and that Garcia's actions were retaliatory, but neither of these theories are adequately supported.  He does not identify any protected speech he participated in directly with Garcia before the use of force, that might have formed a basis for retaliation.  He also does not provide adequate assertions about if he had atypical and significant conditions of confinement for a lengthy period of time.  The disciplinary proceedings Plaintiff described appear to satisfy informal due process, so for now any claim against Garcia is inadequate as to the discipline.  Plaintiff may proceed against Garcia only under the Eighth Amendment for the alleged use of force.

Finally, in Claim 6, Plaintiff alleges that after Garcia's use of force, Defendants Welge and Korondo placed him in a cell covered in feces and urine and disabled his water for 24 hours.  He claims Korondo and Welge saw the mace incident, and knew he did not have a way to at least clean himself off but did nothing.  He claims the conditions persisted for weeks and that Korondo was his gallery officer but did not help. Given that Plaintiff alleges the two saw the application of a chemical agent, and they intentionally disabled his water and toilet, he has alleged enough for now to proceed under the Eighth

13

Amendment against Welge and Korondo either on a theory of deliberate indifference or for inhumane conditions of confinement.

In sum, Plaintiff may proceed on Claim 2 against Slinkard, Eggers, and Gee under the First Amendment; on Claim 4 against Slinkard under the First Amendment; on Claim 5 against Garcia under the Eighth Amendment; and on Claim 6 against Korondo and Welge under the Eighth Amendment. All other claims and parties are dismissed as insufficiently pled.

## DISPOSITION

**Claim 2** may proceed against Defendants Gee, Slinkard, and Eggers; **Claim 4** may proceed against Slinkard; **Claim 5** may proceed against Garcia, and **Claim 6** may proceed against Welge, and Korondo. **Claims 1 and 3** are dismissed in full for failure to state a claim. The Clerk of Court is **DIRECTED to TERMINATE** Defendants Mezo, Wills, Menard Correctional Center, Jeffreys, and IDOC, because Plaintiff has failed to state a claim against these parties.

The Clerk of Court is **DIRECTED** to prepare for Defendants Slinkard, Gee, Eggers, Garcia, Welge, and Korondo: (1) Form 5 (Notice of a Lawsuit and Request to Waive Service of a Summons), and (2) Form 6 (Waiver of Service of Summons). The Clerk is **DIRECTED** to mail these forms, a copy of the Amended Complaint (Doc. 15), and this Memorandum and Order to Defendants' place of employment as identified by Plaintiff. If a Defendant fails to sign and return the Waiver of Service of Summons (Form 6) to the Clerk within 30 days from the date the forms were sent, the Clerk shall take appropriate steps to effect formal service on Defendant, and the Court will require Defendant to pay

the full costs of formal service, to the extent authorized by the Federal Rules of Civil Procedure.

If a Defendant cannot be found at the work address provided by Plaintiff, the employer shall furnish the Clerk with the Defendant's current work address, or, if not known, the Defendant's last-known address. This information shall be used only for sending the forms as directed above or for formally effecting service. Any documentation of the address shall be retained only by the Clerk. Address information shall not be maintained in the court file or disclosed by the Clerk.

Defendants are **ORDERED** to timely file an appropriate responsive pleading to the Complaint and shall not waive filing a reply pursuant to 42 U.S.C. § 1997e(g). **Pursuant to Administrative Order No. 244, Defendants need only respond to the issues stated in this Merits Review Order**.

If judgment is rendered against Plaintiff, and the judgment includes the payment of costs under Section 1915, Plaintiff will be required to pay the full amount of the costs, regardless of whether his application to proceed in forma pauperis was granted. *See* 28 U.S.C. § 1915(f)(2)(A).

Plaintiff is **ADVISED** that he is under a continuing obligation to inform the Clerk of Court and each opposing party of any address changes; the Court will not independently investigate his whereabouts. This shall be done in writing and not later than **14 days** after a transfer or other change of address occurs. Failure to comply with this order will cause a delay in the transmission of court documents and may result in dismissal of this action for failure to prosecute. FED. R. CIV. P. 41(b).

The Clerk of Court is **DIRECTED** to enter the standard HIPAA Order in this case because it will involve the exchange of medical records.

**IT IS SO ORDERED.**

**DATED: November 14, 2025**

                                                            **/s/ Mark A. Beatty**
                                                            **MARK A. BEATTY**
                                                            **United States Magistrate Judge**

### Notice to Plaintiff

The Court will take the necessary steps to notify the appropriate defendants of your lawsuit and serve them with a copy of your complaint. After service has been achieved, the defendants will enter their appearance and file an Answer to the complaint. It will likely take at least 60 days from the date of this Order to receive the defendants' Answers, but it is entirely possible that it will take 90 days or more. When all of the defendants have filed Answers, the Court will enter a Scheduling Order containing important information on deadlines, discovery, and procedures. Plaintiff is advised to wait until counsel has appeared for the defendants before filing any motions, to give the defendants notice and an opportunity to respond to those motions. Motions filed before defendants' counsel has filed an appearance will generally be denied as premature. Plaintiff need not submit any evidence to the Court at his time, unless otherwise directed by the Court.